UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 2:16 CR 23 |
| | ) | |
| MARK WARNE | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by its attorney, DAVID CAPP, through Assistant United States Attorney Joshua P. Kolar, respectfully submits the following memorandum concerning the sentencing of Mark Warne (the "Defendant"). This Sentencing Memorandum is meant to aid the Court in resolving the sole contested issue in the Presentence Investigation report—the correct loss amount under United States Sentencing Guideline Section 2B1.1(b) ("Section 2B1.1(b)").

## Procedural History

The Defendant was indicted on February 18, 2016 on 10 Counts of Bank Fraud, in violation of Title 18, United States Code, Section 1344 and 4 Counts of Identity Theft in violation of Title 18, United States Code, Section 1028(a)(7). Docket Entry 1. On May 10, 2016, the Defendant pled guilty to 1 Count of Bank Fraud. Docket Entry 13. The Plea Agreement set forth the parties'

1

agreement that several sections of the United States Sentencing Guidelines applied. The Presentence Investigation Report incorporates the following enhancements from the Plea Agreement:

- The offense substantially jeopardized the safety and soundness of a financial institution, thereby increasing the offense level by 4 points, pursuant to United States Sentencing Guideline, Section 2B1.1(b)(16)(B).

- The Defendant abused a position of trust in a manner that significantly facilitated the commission or concealment of the offense, thereby increasing his offense level by 2 points, pursuant to United States Sentencing Guideline, Section 3B1.3.

- The offense involved the unauthorized transfer or use of a means of identification unlawfully to produce another means of identification thereby increasing the offense level by 2 points pursuant to United States Sentencing Guideline, Section 2B1.1(11)(C)(i).

Additionally, the parties agreed that the loss amount attributable to the Defendant under Section 2B1.1(b) was greater than $1,500,000 but less than $3,500,000. The Presentence Investigation Report sets forth a greater loss amount. The facts in the Presentence Investigation Report are not in dispute. The Defendant obtained slightly over $6,000,000 in fraudulent loans over a period of 5 years. The Defendant procured all of the fraudulent loans from his former employer, the Community State Bank of Brook, Indiana. The Defendant used the proceeds of these loans, in part, to fund prior fraudulent loans so the loans stayed current and did not raise suspicion. The total amount

of loans in the scheme set forth in the Indictment that were not repaid to the bank—that is the amount of the fraudulent loans minus the amount of money the Defendant paid the bank for those loans—was just under $3,500,000.

## Guideline Analysis

As set forth in the Presentence Investigation Repot and the Plea Agreement, the Defendant's base offense level starts at 7. Pursuant to 2B1.1(b)(1), that offense level is increased by 16 if the loss amount attributable to the Defendant is between $1,500,000 and $3,500,000 and is increased by 18 if that loss amount is between $3,500,000 and $9,500,000. Consistent with the Plea Agreement and Section 2B1.1, Application Note 3(E), the government believes money paid to the victim prior to the discovery of the Defendant's scheme are properly deducted from the loss amount. The Presentence Investigation Report is detailed, factually accurate, and captures all relevant factors. However, it incorrectly applies the more general rules concerning application of Section 2B1.1(b) and overlooks guidance that is directly on point when funds are repaid prior to discovery of the offense.

It is true that loss amount includes "pecuniary harm that was intended to result from an offense and includes 'harm that would have been impossible or unlikely to occur.'" U.S. v. Durham, 766 F.3d 672, 687 (7th Cir. 2014*), cert.*

*denied*, 136 S. Ct. 92 (2015), *and cert. denied sub nom*. Cochran v. U.S., 136 S. Ct. 2035 (2016), citing U.S.S.G. § 2B1.1 cmt. n. 3(A)(ii). The Seventh Circuit has repeatedly "looked to the amount placed at risk by the scheme" in calculating loss amount. Id., citing United States v. Lauer, 148 F.3d 766, 768 (7th Cir.1998). In this context, it is often said that "'the amount of the intended loss, for purposes of sentencing, is the amount that the defendant placed at risk by misappropriating money or other property.'") Id, quoting Lauer and citing United States v. Brownell, 495 F.3d 459, 463 (7th Cir.2007); United States v. Swanson, 483 F.3d 509, 513 (7th Cir.2007); United States v. Lane, 323 F.3d 568, 585 (7th Cir.2003).

The loss amount set forth in the Presentence Investigation Report is based upon this "amount placed at risk" test. An alternative analysis set forth in the Presentence Investigation Report relies in Section 2B1.1, Application Note 3(A)(ii)'s "intended loss" test, which counts as relevant conduct any "pecuniary harm that the Defendant purposely sought to inflict." Such reasoning is not without merit. However, here the "amount placed at risk" and "intended loss" tests should yield to the more specific directive in Application Note 3(E) to credit, or deduct from the loss amount, money a defendant

4

returned to victim prior to any indication that the victim was aware of the fraud.

Application Note 3(E) states:

> (E) Credits Against Loss.--Loss shall be reduced by the following:>
> (i) The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency.

Application Note 3(E) is directly applicable to facts of this case. The defendant retuned money to the victim prior to the detection of the offense. That he did so to help avoid detection of the offense is irrelevant under the plain reading of the application note.

It is well settled law that "where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one." Morton v. Mancari, 417 U.S. 535, 550–51 (1974) (citations omitted). Cannons of statutory interpretation are equally applicable to the United States Sentencing Guidelines and their Application Notes. Accepting the Presentence Investigation Report's loss amount would essentially nullify Application Note 3(E). Nothing in Application Note 3(E) limits its application to instances where

5

the repayment does not also aid a defendant in concealing a scheme to defraud. It is reasonable to believe that the repayment of losses helps conceal schemes in the vast majority of cases.

Failure to properly apply Application Note 3(E) resulted in remand in in a closely analogous 7th Circuit case. In United States v. Peterson, defendant Christian Peterson misappropriated a series of loans meant for specific purposes. This included a $300,000 wire transfer to a casino on April 5, 2016. *Id.* at 1118. On December 6, 2007, Peterson used another loan that was ostensibly made for purposes related to a specific business to draw down, or pay back, $300,000 of his earlier debt. *Id.* at 1119. The government conceded that this was error and the 7th Circuit remanded for resentencing, citing Application Note 3(E). *Id.* at 1126. This follows a long line of cases where the 7th Circuit has recognized that funds repaid prior to the detection of the offense are properly credited against loss. This history was briefly noted in United States v. Brownell, where the 7th Circuit noted that:

> This court addressed the 'credit against loss' provision of § 2B1.1, Application Note 3(E)(i), in *United States v. Hausmann,* 345 F.3d 952, 960 (7th Cir.2003). After quoting Application Note 3(E)(i), *Hausmann* notes that 'this Circuit has adopted a 'credit against loss' approach to the calculation of fraud victim loss amounts for sentencing guideline purposes' because the Sentencing Guidelines 'call for the court to determine the net detriment to the victim, rather than the gross amount of money that changes hands.'

6

> *Hausmann,* 345 F.3d at 960 (citing *United States v. Jackson,* 95 F.3d 500, 506 (7th Cir.1996)). Several other circuits have also found that Application Note 3(E)(i) permits a credit against intended loss for 'money returned' See *United States v. Geeslin,* 447 F.3d 408, 410-11 (5th Cir.2006) (permitting such a credit based on Application Note 3(E)(i)); *United States v. Nichols,* 416 F.3d 811, 819 (8th Cir.2005) (same); *United States v. Rothwell,* 387 F.3d 579, 584-85 (6th Cir.2004)

U.S. v. Brownell, 495 F.3d 459, 463 (7th Cir. 2007)

Application Note 3(E) states by its plain terms and multiple cases stress that the repayments are only creditable against loss when they are made prior to detection of the offense.  However, there is no support for the notion that such repayments are unable to assist in concealing a scheme.  To the contrary, as suggested in United States v. Peterson, in situations where loan funds are misappropriated and a portion is used to repay earlier fraudulent misappropriations, the repayment is creditable against loss under Application Note 3(E).

## **Conclusion**

For the reasons set forth herein the Defendant's loss amount under Section 2B1.1 is between $1,500,000 and $3,500,000. This results in a total offense level of 28 and a Guideline Sentencing Range of 78-97 months. Consistent with the Plea Agreement, the government recommends a sentence of 78 months.

                               Respectfully submitted,

                               DAVID CAPP
                               United States Attorney

                        By:   /s/Joshua P. Kolar
                               Joshua P. Kolar
                               Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2016, I filed the above caption motion with court through electronic process, with a service copy emailed to the following:

William T. Enslen

        Respectfully submitted,

        /s/Joshua P. Kolar
        Joshua P. Kolar
        Assistant United States Attorney